# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Melinda W., | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) Case No.: 20-cv-50090 ) ) Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, Commissioner of Social Security,[1] | ) ) ) |
|     Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

For the reasons set forth below, Plaintiff's motion for summary judgment, Dkt. 26, is denied and the Commissioner's motion, Dkt. 33, is granted.

## BACKGROUND

A. Procedural History

Plaintiff Melinda W. ("Plaintiff") filed an application for supplemental security income on December 19, 2016, alleging a disability beginning December 1, 2015. R. 154-62. Her application was initially denied on June 23, 2017, and upon reconsideration on September 5, 2017. R. 57-67, 80. Following a written request for a hearing, Administrative Law Judge ("ALJ") Lana Johnson held a hearing on November 7, 2018. R. 29-56. Plaintiff appeared with counsel and testified at the hearing. *Id.* The ALJ also heard testimony from an impartial vocational expert. *Id.* On January 31, 2019, the ALJ issued her written opinion denying Plaintiff's claims for supplemental security income. R. 12-28. Plaintiff appealed the decision to the Appeals Council, which denied her request for review. R. 1-6. Plaintiff now seeks review of the decision, which stands as the final decision of the Commissioner. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

B. Relevant Medical History

On March 12, 2016, Plaintiff went to the hospital complaining of a headache, dizziness, lightheadedness, and increased respirations. R. 258. She was diagnosed with uncontrolled hypertension and sleep apnea, and was prescribed medication for hypertension as well as a CPAP for the sleep apnea. *Id.* She was also diagnosed with morbid obesity and was told to discuss diet and activity changes with her physician. *Id.* On March 17, 2016, Plaintiff underwent a physical examination and was assessed with hypertension, sleep apnea, and dyslipidemia. R. 260-262. At that time, she weighed 350 lbs. and was found to have a BMI of 60.13. R. 261. She was told to follow up with a sleep clinic to obtain a CPAP machine. R. 262. On October 20, 2016, Plaintiff

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

presented to the clinic with complaints of pain to her upper right thigh as well as dizziness in the morning. R. 275. Her blood pressure was found to be "at goal" and she was told to continue her medications. R. 276.

On March 15, 2017, Plaintiff was examined by Dr. Olatokunbo Shobande for an internal medicine consultative examination. R. 293. Plaintiff complained of bilateral leg pain and shortness of breath, with limitations with walking, prolonged standing, and sitting. R. 293-94. Plaintiff reported to Dr. Shobande that she was not limited in bathing, dressing, driving, cooking, or feeding. R. 294. Dr. Shobande noted that she could get on and off the exam table without difficulty and could walk greater than 50 feet without support. R. 295. Dr. Shobande also found that Plaintiff had a limited range of motion in her knees and hips as well as weakened lower extremity strength due to her obesity. R. 295. However, the range of motion of her shoulders, elbows, wrists, and ankles was not limited and she had a normal ability to grasp and manipulate objects. *Id.*

On June 17, 2017, Plaintiff had X-ray imagine done on her back and right knee based on complaints of knee pain and low back pain. R. 310-312. The lumbar imaging showed degenerative disc disease and she was diagnosed with mild degenerative changes in the lower spine. R. 311-312. The knee imaging showed some mild osteoarthritic changes in her right knee. R. 312. On August 22, 2017, Dr. Kim Treviranus at CGH Dixon Clinic diagnosed Plaintiff with moderate obstructive sleep apnea and cardiac arrythmias and prescribed a CPAP machine. R. 384-85. Plaintiff was also referred to cardiology regarding the arrythmias. R. 385. On January 15, 2018, Plaintiff followed up with Dr. Eustace for her arrythmias. R. 327-28. Dr. Eustace referred Plaintiff to cardiologist Dr. Ismaila Bello who placed Plaintiff on an event monitor for 30 days to find the reason for palpations, prescribed medication to prevent chest pain, and counseled her on weight loss. R. 329-330.

On February 9, 2018, Plaintiff was admitted to the hospital because her event monitor noticed bradycardia and cardiac pauses. R. 334. As a result, she had emergency surgery to install a pacemaker. *Id.* On March 29, 2018, Plaintiff followed up with pulmonologist Dr. Khawaja Rahman, who was seeing her regarding her pulmonary function test and obstructive sleep apnea. R. 388. Dr. Rahman recommended that Plaintiff continue with the CPAP counseling regarding weight loss. *Id.* Plaintiff followed up with cardiologist Dr. Sterling Reese on June 21, 2018, and he found that Plaintiff had no palpitations, and that the cardiac exam revealed a regular rhythm with no definite murmurs. R. 330-332.

On June 27, 2018, Plaintiff saw Dr. Katherine Zeigler to obtain a letter for public aid stating that she is not able to work. R. 406. Notes from the visit state that her gait was "slow but steady," she had a BMI of 60.51, and she was complaining of lower back pain. R. 404-05. Dr. Ziegler noted a request for records from previous doctor's office, hospitalization for pacemaker, and any previous disability documentation (presumably in regards to Plaintiff's request for the letter for public aid) and recommended that Plaintiff follow up with her primary care provider. R. 406. Plaintiff saw Dr. Eustace on August 10, 2018, who found that plaintiff's medical conditions were generally stable and well controlled at the time, with the exception of a medication issue they were working out with insurance. R. 424.

On June 22, 2017, Dr. Reynaldo Gotanco, a state agency medical consultant, opined that Plaintiff could lift 10 lbs occasionally, less than 10 lbs frequently, and could stand and walk for 2 hours in an 8-hour workday. R. 63. Dr. Gotanco remarked that she used a cane at times and had diminished strength in her left lower extremity on examination. *Id.* He further noted that Plaintiff had degeneration of the lumbar spine and osteoarthritis of the right knee. *Id.* He determined that she could only occasionally do postural activities such as balancing, stooping, and kneeling. R. 64. On September 1, 2017, Dr. James Hinchen, another state agency medical consultant, issued an opinion essentially affirming Dr. Gotano's analysis, noting no new impairments. R. 76-78.

At the hearing on November 7, 2018, Plaintiff testified that her legs hurt when she drives. R. 35. She stated that cannot breathe when she walks and that due to sciatic nerve pain she often cannot get out of bed. R. 38. She stated further that if she sits for too long without leaning, she gets pain in her back and her legs go numb. *Id.* In addition, Plaintiff testified that her arms are so heavy that she cannot use them without getting tired. *Id.* Plaintiff further testified that she is bed bound and her boyfriend takes care of her, including cooking and cleaning, because she has trouble getting up. R. 38, 43. Plaintiff stated that she wears diapers, and her boyfriend also helps with personal care and hygiene. R. 43. She weighed approximately 355 pounds at 5'3" (BMI of 62.9) at the time of the ALJ hearing. R. 40-41.

C. The ALJ's Decision

On January 31, 2019, the ALJ found that Plaintiff did not qualify as disabled. R. 12-28. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity. R. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of the right knee, atrial fibrillation treated with a pacemaker, obesity, and diabetes. R. 17. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, paying particular attention to listings 1.02, 1.04A, 1.04B, 1.04C, and 4.05. R. 18-19.

Prior to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except that she could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and could face only occasional exposure to unprotected heights, dangerous heavy moving machinery, vibration, dust, gases, odors, fumes, and pulmonary irritants. R. 19. At step four, the ALJ found that Plaintiff could perform past relevant work as a coil binder and a labeler. R. 23. Based on these findings, the ALJ found that Plaintiff was not disabled. *Id.*

**STANDARD OF REVIEW**

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at * 5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the

threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at * 7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). Additionally, "[a]n ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

**DISCUSSION**

Plaintiff raises three primary arguments in her motion for summary judgment, all of which pertain to the ALJ's RFC analysis: (1) the ALJ failed to properly assess the combination of Plaintiff's impairments in connection with her obesity; (2) the ALJ erred by adopting the opinions of the state agency medical consultants; and (3) the ALJ improperly evaluated Plaintiff's sleep apnea. Plaintiff's arguments essentially involve whether the ALJ properly concluded that she had the RFC to perform sedentary work with various postural limitations. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). It is the Commissioner's duty to evaluate a claimant's RFC. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "In determining what a claimant can do despite [her] limitations, the [ALJ] must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do." *Id*.; *Murphy*, 759 F.3d at 818. In addition, "[t]he ALJ has the responsibility of resolving any conflicts between the medical evidence and the claimant's testimony." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2014). For the following reasons, the Court finds that the ALJ's RFC assessment was supported by substantial evidence.

1. The ALJ Properly Considered Plaintiff's Obesity in Assessing Plaintiff's RFC

Plaintiff argues that the ALJ failed to properly consider her obesity under Social Security Ruling ("SSR") 02-1p. Pursuant to SSR 02-1p, the "combined effects of obesity with other impairments may be greater than what might be expected without obesity." SSR 02-01p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Notwithstanding, "obesity is no longer a standalone disabling impairment . . . the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018) (citation omitted). The Court finds that the ALJ properly considered Plaintiff's obesity and its combined effects with other impairments.

The ALJ considered Plaintiff's obesity throughout her decision. First, the ALJ found that Plaintiff's obesity constituted a severe impairment at step two because it "significantly limit[s her] ability to perform basic work activities as required." R. 17. The ALJ also considered Plaintiff's obesity at step four. She reviewed Plaintiff's height and weight and noted that her BMI ranged from 61.6 to 64.6, qualifying as morbidly obese. R. 22. The ALJ also detailed the impairments and limitations that obesity may cause on body systems and within the work environment. The ALJ noted, however, that "[i]n spite of her weight, clinicians observed the claimant ambulate without an assistive device, and to retain a functional, if not always full and pain free, range of motion." *Id.* Notwithstanding, based on Plaintiff's pain, fatigue, shortness of breath, reduced ranges of motion, and the "complicating effect of her morbidly obese body," the ALJ restricted her to sedentary work with postural limitations. *Id.* The ALJ, thus, specifically considered Plaintiff's obesity in connection with her other impairments. Given this analysis, the ALJ's RFC finding was supported by substantial evidence.

Plaintiff argues that the RFC is insufficient because it conflicts with the limitations she testified to, including difficulties with daily activities due to breathing, managing hygiene, her need for personal assistance in using the bathroom, and her need to lie down for part of the day. Plaintiff further contends that the ALJ failed to explain her determination that Plaintiff was not limited in the use of her upper extremities, particularly given her testimony regarding numbness in her arms and legs and difficulty with reaching and handling. Plaintiff claims that the ALJ failed to explain how limiting her to sedentary work sufficiently accommodated these limitations, in light of medical records documenting her heart condition, degeneration of the spine, and sleep apnea, associated with her obesity. Plaintiff further contends that the ALJ should have called a medical expert to clarify the limitations caused by her obesity.

The regulations require a two-step process for evaluating a claimant's description of her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The Court shall give an ALJ's evaluation of a claimant's subjective symptom allegations "special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017 (internal citations omitted). Further, a reviewing court should rarely disturb a subjective symptom evaluation, because it lacks "the opportunity to observe the claimant testifying." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). It is Plaintiff's burden to show that an ALJ's subjective symptom analysis is "patently wrong." *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018).

The ALJ acknowledged Plaintiff's testimony about her impairments, such as difficulty breathing, mobility issues, including numbness in her arms, fatigue, and challenges in managing her hygiene. However, the ALJ determined that the record did not support crediting her allegations of disabling impairments. The ALJ appropriately evaluated Plaintiff's alleged symptoms in the context of the objective medical evidence. In doing so, the ALJ noted Plaintiff's doctors did not document any functional limitations, or impose any restrictions related to Plaintiff's obesity. Rather, her course of care was generally "routine and conservative" and when she developed a cardiac issue it was controlled with a pacemaker and medications. R. 20. In addition to the

minimal objective findings, the ALJ properly considered other factors including conflicting information in the record regarding Plaintiff's daily activities and her ability to care for herself, such as the fact that she told a consultative examiner that she could bathe, dress, drive, cook, and feed herself, but testified to the contrary. The ALJ collectively weighed these factors in discounting Plaintiff's testimony regarding her subjective symptoms. The ALJ's weighing of these factors was sound and not patently wrong. *See Lynida W. v. Saul*, No. 19 C 2021, 2020 WL 2542156, at *5-7 (N.D. Ill. May 19, 2020) (ALJ's analysis of objective medical evidence, daily activities, and other factors was an appropriate evaluation of Plaintiff's testimony as to how Plaintiff's obesity exacerbated her underlying impairments).

Furthermore, the Court notes that any error in considering plaintiff's obesity in combination with her other impairments was harmless, given that Plaintiff's RFC is based on limitations identified by doctors who specifically considered her obesity. The Seventh Circuit has "repeatedly excused as harmless error the failure of an ALJ to explicitly address the claimant's obesity . . . so long as the ALJ demonstrated that he reviewed the medical records of the doctors familiar with the claimant's obesity." *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013). In this case, the ALJ predicated her decision primarily on the opinions of the state agency doctors. Those doctors considered Plaintiff's obesity and purposefully limited her standing and walking time due to her obesity.

2. The ALJ Properly Considered the Opinions of the State Agency Consultants in Assessing Plaintiff's RFC

Plaintiff argues that the ALJ improperly relied on the state agency opinions even though they were issued prior to her treatment for her heart condition in 2018 when she underwent pacemaker implantation. However, an ALJ "may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion." *Massaglia v. Saul*, 805 Fed. Appx. 406, 410 (7th Cir. Mar. 4, 2020) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). "[I[f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 Fed. Appx. 477, 481 (7th Cir. 2017) (internal citation omitted).

The records not considered by the state agency doctors relating to Plaintiff's pacemaker implantation were not so significant that it was critical to the RFC finding. The ALJ accounted for that evidence, reasonably concluding that because it documented improvement in Plaintiff's condition after her pacemaker implantation, it would not have altered her limitations. R. 21 (finding Plaintiff had "'no issues or complaints' at a May 2018 visit and a physical exam was generally normal. She also alleged at this time that she was 'walking more' and was more active without a need to use a walker as much. While the claimant presented to a June 2018 visit in a wheelchair a cardiac exam was normal and there was only minimal edema to the extremities with intact neurological findings."). As such, the new evidence not considered by the state agency reviewers provides no basis for remand because it did not significantly change the picture as to Plaintiff's limitations. Moreover, as the ALJ noted, the opinions of the state agency doctors were not contradicted by any treating physician and "[t]here is no error when there is 'no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ.'"

6

*See Best v. Berryhill*, 730 F. Appx. 380, 382 (7th Cir. 2018) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

    3.   The ALJ Properly Considered Plaintiff's Sleep Apnea

Plaintiff argues that the ALJ erred in evaluating her sleep apnea, first by finding it not severe at step two and then by not including any limitations in the RFC to account for it. The ALJ found that Plaintiff's sleep apnea was not severe because "there is insufficient information that [it] cause[d] functional limitations. Records show that CPAP and supplemental oxygen were effective in managing her sleep apnea." R. 17. Plaintiff claims that this finding was in error, alleging that the state agency consultants found differently, even though they did not find that it would impact her ability to do sedentary work. As the Seventh Circuit has noted, however, "Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (citing *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Regardless of whether Plaintiff's sleep apnea was considered severe, the ALJ "must later consider the limitations imposed by all impairments, severe and non-severe." *Ray*, 915 F.3d at 492; 20 C.F.R. § 404.1523. In this case, the ALJ found that Plaintiff had severe impairments and completed the analysis of her claim. Accordingly, any error in finding her sleep apnea non-severe was harmless.

Plaintiff also disputes the ALJ's consideration of her sleep apnea in formulating the RFC. She contends that "even if the step two determination is simply a threshold requirement, a remand is warranted where it is not apparent whether the ALJ considered an impairment, even if it is non-severe, into account in the RFC determination." Dkt. 26, 12. Plaintiff contends that the ALJ improperly played medical doctor in determining that no additional restrictions were warranted based on her sleep apnea, particularly given her difficulty in getting out of bed and walking around her house.

However, the ALJ had a medical basis to find the sleep apnea non-severe. The medical records showed that Plaintiff's treatment with CPAP and supplemental oxygen were managing the condition. R. 17, 21. The ALJ provided a thorough analysis of Plaintiff's sleep apnea, and no evidence was presented that it was disabling. To the contrary, the ALJ discussed evidence of her improvement. An ALJ may rely on medical evidence that a condition is being controlled by medical treatment. *See Truelove v. Berryhill*, 753 Fed. Appx. 393, 397 (7th Cir. 2018). As to Plaintiff's suggestion that the ALJ played doctor, the ALJ relied on the opinions of the state agency doctors who specifically cited the sleep apnea in their analysis as support for the exertional limitations they offered and their conclusion that Plaintiff was able to perform work at the sedentary level. In addition, Plaintiff does not identify any additional restrictions she believes are necessary based on her sleep apnea. While Plaintiff speculates that sleep apnea may have caused fatigue, she does not cite to any medical evidence of record in support of this allegation, or any evidence to show that her sleep apnea caused significant limitations in her work-related functioning during the relevant period. The ALJ properly considered Plaintiff's sleep apnea and her conclusions are supported by substantial evidence.

## CONCLUSION

For these reasons, Plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted. The decision of the ALJ is affirmed.

Date: July 15, 2022　　　　　　　　　　ENTER:

_____
United States Magistrate Judge